### FAULKS and others *v.* KAMP and another.

*(Circuit Court, S. D. New York.    ——, 1880.)*

1. PATENT RIGHT—SALE—IMPLIED WARRANTY.—The sale of a patent right creates an implied warranty as to title.

2. SAME—SAME—SAME.—Such warranty grows out of the sale, and not out of the form of the conveyance.

3. SAME—SAME—SAME—AFTER-ACQUIRED TITLE.—In such case the warranty draws to it any after-acquired right or title of the warrantor.

In Equity.

*Chas. N. Judson* and *E. H. Benn*, for complainants.

*J. C. Clayton, F. J. Fithian,* and *E. S. Bacbock*, for defendants.

WHEELER, D. J. This suit is brought for relief against infringement of letters patent No. 68,282, dated August 27, 1867, and granted to the defendant Charles Brown for an im-

provement in baling short-cut hay. The orators claim to have the title to the whole of the patents for the New England States, New Jersey, and New York, except Erie county, and allege infringement at the city of New York. Their title is not disputed, except that the defendants allege that one Samuel B. Clark owns a share in the patent, said to be one twenty-fourth part; and they justify under a license granted by the former owners to Angelina Brown, wife of Charles Brown. The share of Clark does not appear to cover the territory involved in this suit; and the license to Angelina Brown was revocable, and was revoked by the conveyance of the title of the licensors, so that the orators are considered as holding the title to the patent for this territory. Of course the whole of their title must have been derived from the defendant Brown, to whom the patent was granted. Faulks, orator, first acquired, by various mesne conveyances, the whole title for this territory. He conveyed shares to each of the defendants, and they, with him and a son of his, formed a copartnership which carried on the business of baling hay under the patent. Then they sold their interest in the partnership business and property, including the patent, to him, and in their conveyances of the patent each described the thing conveyed as the full and entire right, title, and interest which he had and possessed in and to the patent, and the inventions and improvements described in and secured by it. He conveyed an interest to each of the other orators. The defendants now deny the validity of the patent, because, they say, that Brown was not the original and first inventor of the improvement described in it, and they have acquired a prior patent which they say covers the same improvement under which they claim the right to practice the invention; and they deny all infringement of the patent.

There is considerable doubt whether the patent, as between the owners and the public generally, is of any validity. Hay has long been baled, to the common knowledge of all. The whole invention in controversy consists in baling hay cut short in the same manner. The well-known process of baling hay was applied to another kind of hay. The short-cut

hay was well known before, and the process made no change in its properties or quality. When baled it could be more conveniently handled, as common hay could be. *Langdon* v. *De Groot*, 1 Paine, 203; *Alcott* v. *Young*, 16 O. G. 403. But it is argued for the orators that they are entitled to have the patent treated as valid, as against the defendants, whether it is valid generally or not, and this claim seems worthy of consideration. Every seller of personal property impliedly warrants that he has title to and right to sell what he assumes to sell. His undertaking to sell includes an undertaking to that effect. 2 Black. Com. 451; Long on Sales, (Rand's. Ed.) 203; *Defreeze* v. *Trumpter*, 1 John. 274; *Coolidge* v. *Brigham*, 1 Met. (Mass.) 547. In *Heermance* v. *Vernoy*, 6 John. 5, it was held that a sale of a millstone of a bark mill to a tannery as personal property, which might belong to the realty and not pass by such a sale, implied a warranty of title to it as personalty; and in *Hannum* v. *Richardson*, 48 Vt. 508, that a sale of a negotiable note, although indorsed without recourse, involved a warranty that it was a genuine note due the seller. It is urged strenuously in behalf of the defendants that these principles do not apply to sales of patent-rights, on account of their incorporeal nature and the interests to the public. In *Medina* v. *Stoughton*, 1 Salk. 210, Lord Colt is reported to have said that such a warranty was implied upon a sale by one in possession and not by one not having possession; but this saying is doubted, and the distinctoin denied by Mr. Justice Buller in *Pasley* v. *Freeman*, 3 T. R. 51. But if possession should be material, the defendants appear to have claimed and had the exclusive right to this invention, and to have sold and conveyed all the right possessed by them. The nature of the right covered by letters patent, does not seem to be such that a warranty of the right cannot be implied. The patent purports to grant the right to exclude all others from practicing the invention. It adds nothing to the right of the owner to practice it. This exclusive right is property recognized and protected by law. *Cammeyer* v. *Newton*, 94 U. S. 225. Whosoever assumes to sell a patent assumes to sell that property, and assumes that he had

it to sell. This suit is between these parties, and involves their rights alone, and not the rights of the public. The determination of the validity of the patent in this suit will only determine its validity between them, and not affect its validity as to others not parties. The defendants in possession and enjoyment of that exclusive right assumed to sell and transfer it. After that, in justice, they ought not to be heard to say that they had it not and did not sell it, and to be allowed to derogate from their own grant by setting up that it did not pass. They may have deprived themselves of the right to practice it within the territory when otherwise they would have retained the right in common with all others; but, if they did, that would not so affect the public as to avoid their obligation. They could exclude themselves in that way by contract, independently of the patent, and the contract would be upheld if it went no further than upholding this patent as against them in the territory in question would take them. It would be upon good consideration, reasonable, and only in partial restraint of trade. *Pierce* v. *Woodward*, 6 Pick. 206; Chitty on Cont. 576. The question as to the right of a vendor of a patent to deny its validity afterwards came up in *Chambers* v. *Chrichley*, 33 Beav. 374 That case was similar to this in important features. The parties had been partners in the manufacture of stoves under a patent which they owned. The defendant sold his share in the partnership assets, including the patent, to the plaintiffs, but afterwards continued the manufacture and the suit was brought for that infringement. Upon that case Sir John Romilly, master of the rolls, in delivering judgment, said: "I do not intend to express my opinion as to the validity of Wright's patent. I will assume, for the purposes of my judgment, that it is worth nothing at all. But this is certain, that the defendant sold and assigned that patent to the plaintiffs as a valid one, and having done so he cannot derogate from his own grant. It does not lie in his mouth to say that the patent is not good." And an injunction and an account were decreed. It is argued for the defendants that as the conveyances were of the right, title, and interest of the grantors, the warranty would only

extend to whatever right they might have which passed, and that the warranty was kept. But the conveyances were made to carry out the sale in the manner required by law for passing the title, and the warranty grew out of the sale and not out of the form of the conveyance. And the patent subsequently purchased by the defendants may be better than this for covering this invention, but if it is it cannot help the defendants as against the orators. It is a familiar law, and has been for a long time, that a warranty of title or right draws to it any after-acquired right or title of the warrantor, and carries it to the benefit of the person to whom the warranty runs. So whatever right, if any, the defendants acquired to the invention covered by this patent, enured directly to the benefit of the orators. It is also urged that the purchaser knew of the defects and was not deceived, and that, therefore, the defendants are not estopped. But the rights of the orators do not rest upon the estoppel merely; they rest upon the purchase, which must operate so that the orators may have what they bought, and so that the defendants shall not both sell and keep the same thing.

The evidence of the acts, conduct, and claims of the defendants leaves no room for any fair doubt but that they infringe by doing what they claimed and exercised as their exclusive right when they had the patent, and by practicing the invention which the patent purports to cover.

Let a decree be entered for an injunction and an account, according to the prayer of the bill, with costs.