CURRAN and others *v.* BURDSALL.

*(District Court, N. D. Illinois. July 16, 1883.)*

1. PATENT LAW—ASSIGNOR AND ASSIGNEE—OTHER PARTIES.
    The assignee of a patent is clothed with the right, as against the assignor, to make articles covered by the patent, although the patent may be void for want of novelty as against the rest of the world.
2. SAME—ESTOPPEL—LICENSE—JOINT PATENTEES—RIGHTS INTER SESE.
    If one of several joint patentees assigns to a third party, the estoppel upon the assignor must work a license to the assignee to use the patent, and the joint owners of the patent must look to the one who assigns for an accounting.
3. SAME—WARRANTY—AFTER-ACQUIRED RIGHTS.
    The warranty of a title, or right to it, draws to it any after-acquired right or title of the warrantor, and carries it to the benefit of the person to whom the warranty runs.
4. SAME—WARRANTY GENERALLY AS TO RIGHTS SUBSEQUENTLY ACQUIRED.
    A patentee cannot sell his right to another, and then buy or obtain control of an older patent, and through such older patent dispossess his assignee of the full benefit of what he purchased.

In Equity.

*G. L. Chapin* and *Elbridge Hanecy,* for complainant.

*West & Bond,* for defendant.

BLODGETT, J. This is a bill to restrain the alleged infringement by defendant of letters patent No. 76,661, dated July 7; 1868, issued to Richard P. Johnson and Eli J. Sumner, for an improvement in lumber-driers, which it is claimed has been assigned to complainants.

The bill also charges the infringement of three other patents, claimed to be owned by complainants, but as no proof in regard to them has been put into the record no further notice will be taken of them. No question is made as to complainants' title to the Johnson and Sumner patent.

The main matter of defense relied upon by defendant is that two patents,—one numbered 161,490, dated March 30, 1875, which is reissued as No. 8,846, and the other numbered 189,432, dated April 10, 1877, which is reissued as No. 8,840,—were duly issued to complainant John J. Curran for improvements in lumber-driers, and that the right, title, and interest in and to said patents in and for the state of Wisconsin has been duly assigned and transferred to and vested in defendant, and that all the lumber-driers built by defendant in the state of Wisconsin have been constructed in accordance with said two letters patent so as aforesaid issued to complainant Curran.

Defendant further insists that all of complainants' interest in the patents set out in the bill of complaint has been acquired since the issue of said two patents to Curran, and since Curran assigned his interest in his said two patents in and for the state of Wisconsin, and that defendant acquired and holds his title to said two patents under assignments from complainant Curran and one Wilcox, who was interested with Curran as owner thereof.

One element of the Johnson and Sumner patent, No. 79,661, was a series of curtains suspended from the stanchions of the car on which the lumber was held in the drying-room, the function of these curtains being to arrest and turn down the flow of the hot-air current, so as to compel the passage of the hot air upon and about the lumber on the cars, while it passes through from the rear to the front of the kiln; and the second claim is:

"(2) The providing the cars with curtains, or like device, in the manner and for the purposes set forth."

The Curran patent, No. 189,432, being reissue No. 8,840, the right of which, for Wisconsin, is held by defendant, contains, as one of its elements or features, provision for curtains to be suspended from the ceiling of the drying-room, the description of which in the specification is as follows:

"I also place curtains, h h, of canvas, or equivalent material, at intervals along the ceiling of the drying chamber, to hang loosely down about eighteen inches, to rest upon the top of the cars of lumber, thus preventing the hot air from rushing along the ceiling, and forcing it downward to pass through the lumber and under the same."

The curtain or sliding door, N, at the front end of the kiln and extending down, as described, to form the lower draught, causes the air in its passage through the kiln to move along the floor and through the lower courses of the lumber. To further facilitate this movement, the smaller curtains, h, are also hung from the ceiling at intervals of about 12 feet, extending about 18 inches down to and resting

upon the cars or lumber, thus preventing the hot air from rushing along the ceiling and out the chimney, and forcing it, by a lower draught, to pass through and underneath the lumber. Nearly over the inner edge of the opening, e, by which the hot air is admitted to the kiln, the longer curtain, $h^1$, is suspended, hanging free from, but near, the adjacent lumber-pile, as shown in the drawings. This curtain receives the hot air and directs it horizontally against the lower portion of the nearest lumber-pile. Once given a horizontal direction, and finding egress only beneath the lowered curtain or door, N, with the strong draught that usually prevails through the kiln, the air has much less tendency to rise to the ceiling in its passage to the chimney. Such tendency being, however, still sufficient for the purpose of the distribution of the air and its action upon the lumber, is essentially uniform throughout the heighth and breadth of the drying chamber. And this feature is covered by claim No. 7, which is in these words:

"(7) The combination with the drying chamber, A, curtain, N, forming a downward extension of the chimney, and the opening, e, for the admission of the hot air from below, of the curtain, $h^1$, depending from the ceiling at a point nearly over the inner edge of the opening, e, and reaching from side to side of the kiln, substantially as and for the purpose set forth."

The only lumber-driers built by defendant were so built in the state of Wisconsin, and are provided, as the proof shows, with curtains suspended from the roof in the manner called for by the Curran patent. The proof shows that the Johnson and Sumner patent was acquired by complainants after the issues of the Curran patents, and after Curran had assigned his interest therein for the state of Wisconsin.

Complainant Curran, having set forth in his patent No. 189,432 the curtain suspended from the ceiling, is now estopped from defeating the right of defendant to construct lumber-driers in accordance with the terms of the patent by the purchase of the older patent of Johnson and Sumner. Curran has held himself out to the world as the inventor of this peculiar curtain device, and it would be grossly unjust and inequitable to allow him to defeat his assignee's rights to the full enjoyment of this patent by acquiring the ownership of this older patent, even if the older patent clearly anticipated the Curran device. By becoming the owner of this Curran patent defendant is clothed with the right as against Curran to make driers as directed in that patent, although the patent may be void for want of novelty, against the rest of the world. It is true, two other persons are associated with Curran in the ownership of the Johnson and Sumner patent, but it seems to me the estoppel upon Curran must operate as a license from Curran to defendant to use the Johnson and Sumner patent in the state of Wisconsin, and Curran's co-owners must look to him for an accounting as to this territory.

It would hardly seem necessary to cite authorities in support of this palpable equity of defendant against Curran and his co-com-

plainants, but reference to a few cases where questions analogous to this have arisen may not be out of place.

In *Faulks* v. *Kamp*, 3 FED. REP. 898, the court said:

"It is argued for the defendants that as the conveyances were of the right, title, and interest of the grantors, the warranty would only extend to whatever right they might have which did pass, and that the warranty was kept, but the conveyances were made to carry out the sale in the manner required by law for passing the title, and the warranty grew out of the sale, and not out of the form of the conveyance, and the patent subsequently purchased by the defendants may be better than this for covering this invention, but, if it is, it cannot help the defendants as against the orators. It is a familiar law, and has been for a long time, that a warranty of title or right to it draws to it any after-acquired right or title of the warrantor, and carries it to the benefit of the person to whom the warranty runs. So, whatever right, if any, the defendants acquired to the invention covered by this patent, inured to the benefit of the orators. It is also urged that the purchasers knew of the defects, and were not deceived, and that, therefore, the defendants are not estopped. But the rights of the orators do not rest on estoppel merely; they rest upon the purchase, which must operate so that the orators may have what they bought, and so that the defendants shall not both sell and keep the same thing."

In *Gottfried* v. *Miller*, 104 U. S. 521, the court says:

"It remains to consider whether the sale by Stromberg to the defendant, Miller, of one of the pitching-machines containing the improvement described in the patent, protects him from liability for its use in this suit. By the contract of sale Stromberg warranted, not only the title to the machine itself, but of the right to use it. If, at the time of the sale, he had been the owner of the patent, the sale would have constituted a license to Miller to use the machine as long as it lasted; but Stromberg did not acquire any interest in the patent until long after the date of his sale to Miller. If he had subsequently become the sole owner of the patent, his previous sale to Miller of a machine embodying his patented invention would have estopped him from prosecuting Miller for an infringement of the patent by the use of the machine."

The rule deducible from these authorities is that a patentee cannot sell his rights to another and then buy or obtain control of an older patent, and through such older patent dispossess his assign of the full benefit of what he purchased. Therefore, without discussing the question whether, by the suspension of the curtains from the ceiling of the drying-room, defendant infringes the second claim of the Johnson and Sumner patent, which specifically provides for suspending the curtains from the stanchions of the car, I am of opinion that complainants cannot enforce the Johnson and Sumner patent against defendant, because defendant, as owner of the Curran patent, has the right to use the Curran curtains in the state of Wisconsin.

The bill is therefore dismissed for want of equity.