Littleton, Judge:
The defendant’s first motion for a new trial was overruled by the court January 12, 1931. It presented nothing that had not been fully presented, briefed, and argued at the time the case was heard and submitted, all of which was fully considered by the court in the findings of fact and opinion published October 20, 1930.
The defendant has submitted a motion for leave to file a second motion for a new trial which is submitted with its motion for leave to file. The motion for leave to file a second motion for a new trial is allowed, and the second motion for a new trial tendered is ordered filed.
The present motion is based upon the alleged error of the court in denying the defendant judgment against the plaintiff for $315,745.10 on count 1 of its counterclaim on the facts as found by the court. This alleged error of law is predicated upon the assumption that the reason for the court’s refusal to give the defendant judgment upon count 1 of its counterclaim with reference to the contract between the plaintiff and the defendant, G-919-501-A, as supplemented April 27, 1918, -was the statement of the court contained in the last paragraph of its opinion and particularly the last sentence thereof, as follows: “ In view of our conclusion on the defendant’s counterclaim, it is unnecessary to examine, into the question of the quantity, value, and disposition of the forgings or the probable freight charges for transportation to and from the fabricating factories, the allowance made or not made to the fabricating manufacturers, or the question of the value of the fuses used in testing operations. All of these are subordin-nate to the main fact. They were the subject of consideration, adjustment, and agreement upon the occasion of the settlement agreement between the parties to the various contracts of manufacture, and presumably were disposed of *233 upon the basis of a determination satisfactory to the parties at that time.” The defendant states, “ We apprehend that the court may have misinterpreted the facts pertinent to the defendant’s counterclaim. No settlement contracts were entered into between the plaintiff and the defendant on contract G-919-501 — A upon which the portion of counterclaim involved in this motion is predicated.” The defendant is in error in this assumption. The court did not say that there were settlement contracts and, so far as contract G-919-501-A is concerned, the court had reference to> the negotiations and correspondence preceding the final settlement under this contract, some of which are detailed in Finding XIV.
Following this, the motion discusses the original contract above mentioned, hereinafter referred to as 501-A, and the supplement of April 27, 1918, Article III of which supplement provided that “ The contractor agrees to assume the contract between the United States * * * and the American Brass Company, G-941-511-A, and all obligations of the United States under said contracts, and the contractor hereby agrees to hold the United States harmless from all loss or damage resulting from the failure of the United States to perform said contracts,” and points out, as found by the court in Finding VIII, that the United States paid the American Brass Company, under contract G-941-511-A, $517,706.70. The defendant concedes that if it is correct in insisting that the plaintiff is liable to the United States for the full amount paid to the American Brass Company there would be due the plaintiffs certain credits against this amount of $201,961.60, leaving $315,745.10 due the United States, for which .the motion asks that judgment be entered in favor of the defendant on count 1 of its counterclaim.
The defendant further states that “ We construe the failure of the court to allow this amount on the counterclaim to be based on the ruling in the last paragraph of the opinion. * * *. We submit, however, that this conclusion is inaccurate. The settlement contracts, and there were many of them, between the plaintiff and the Government *234 did not deal with or consider in any way the contract under discussion, G-919-501-A, nor any of the amendments or supplements thereto.” The defendant insists further that “ That portion of the opinion on page 14 in which the manner of delivery of material to the plaintiff, * * *, as distinguished from the American Brass Company, is discussed, is not pertinent to the delivery of the copper and raw spelter to the Brass Company. However loose and unsystematic may have been the manner of keeping record of the materials furnished the International Arms & Fuze Company,-there is a definite and ultimate finding of fact by this court that the United States furnished the American Brass Company raw spelter and copper of the aggregate value of $517,706.70, including conversion and freight charges. (Finding VIII, p. 4.) The correctness of this finding has not been challenged. The comments of the court in its opinion as to the inaccuracy of the Government’s accountants as to the deliveries to the International Arms & Fuze Company are not relevant to this issue and in no way qualify the finality of this finding of fact by the court. We maintain that this is the amount of the obligation of the United States to the American Brass Company which was assumed by the plaintiff under Article III of the amenda-tory supplemental contract of April 27, 1918.”
The defendant is in error in assuming that the basis for the denial of its counterclaim was the statement contained in the last paragraph of the opinion. The reasons upon which the court denied the entire counterclaim, including the count with reference to the amount paid by the defendant to the American Brass Company which constitutes the only basis for the present motion, were those stated by the court in the entire opinion and not merely in the last paragraph thereof upon which the defendant, in support of its motion, lays particular stress. At the trial and in its original brief the defendant contended, first, that the material fabricated by the Chase Company and the American Brass Company was delivered to and used by plaintiff on its fuze contracts with the Government, and, secondly, “ that under the provisions of Article III (of the supplemental agree *235 ment of April 27, 1918, to contract G — 919—501—A) it is not necessary for the defendant to show delivery to the plaintiff of a single body forging or pound of brass that the contracts with the Brass Company provided should be manufactured and delivered to the plant of the International Arms & Fuze Company. The plaintiff assumed the contracts and all obligations of the United States thereunder.” These contentions were duly considered and overruled by the court. The position taken in this motion for a new trial is substantially the same as the contention originally made and quoted above. The court held, and it is still of the same opinion, that the plaintiff can not be held liable to the United States for the amount paid by the defendant for copper and raw spelter delivered to the Brass Company for use in fabricating brass rod and sheet brass, nor for the amount paid by the defendant to the Brass Company for the' fabricated raw material which was never delivered to or received by the plaintiff but which was kept by the defendant.
The facts submitted in support of the counterclaim fail to show that the raw material was ever received or furnished to the plaintiff but, on the contrary, the record justifies the conclusion that it was at all times held by the defendant as its own property and was retained and otherwise used or disposed of by the defendant after the contract, 501-A, had been completely performed. We are of opinion that the defendant is in error when it insists that these reasons are not pertinent to the delivery of the brass and raw spelter to the American Brass Company and the amounts paid by the defendant to the Brass Company for the fabricating of the brass rod and sheet brass, and that the plaintiff is liable to the United States for the amount paid to the Brass Company regardless of the fact that it has not been shown that plaintiff ever received any of the material, or that it ever received more than it has paid for.
The defendant has failed to show what portion, if any, of the total of 2,247,055 pounds of brass rod and 83,418 pounds of sheet brass shipped by the Army inspector of ordnance at the plant of the American Brass Company to *236 tibe defendant’s Army inspector of ordnance at plaintiff’s plant for use, if necessarj^ by the plaintiff in the performance of contract G-919-501-A, was ever issued by the defendant to the plaintiff and received or used by the plaintiff in the fulfillment of this contract. On the contrary, the facts justify the conclusion that the plaintiff did not receive and use any of this brass rod and sheet brass on contract G-919-501-A. Under the contract plaintiff was permitted to use its own supply of material and the facts show that it had a large supply of brass and other material suitable for use under this contract on hand, and that such materials were used by the plaintiff in the fulfillment of contract 501-A. See Finding XII. Finding IX shows the total amount of brass rod and sheet brass shipped from the plant of the American Brass Company to the defendant’s inspector of ordnance at the plaintiff’s plant, and Finding XIII shows that when contract 501-A was completed by the plaintiff on or prior to July 1, 1918, the defendant’s Army inspector of ordnance at its plant had in his possession 2,952,624 pounds of brass rod and sheet brass. Finding XII further shows that it frequently happened that cars of material consigned to the defendant’s Army inspector of ■ordnance at the plaintiff’s plant were diverted and sent to other plants.
By the supplemental contract of April 27, 1918, to contract G-919-501-A, whereby the plaintiff under 'Article III assumed the obligation of the United States to the American Brass Company under the contract between the United States and the Brass Company, No. 511-A, the plaintiff did not agree to pay the United States whatever amount it might pay for copper and spelter delivered to the Brass Company and the amount paid to the Brass Company and freight charges, and permit the United States to keep as its own all of the material furnished by the Brass Company. It would be an unwarranted construction of Article III of the supplemental contract of April 27, 1918, to say that under it the plaintiff agreed to pay $517,706.70 (Finding VIII) for raw material and give it to the defendant. It was the clear understanding of the parties that the American Brass Company *237 would ship brass rod and sheet brass to the flaintvff and not' to the defendant, and that the plaintiff would pay therefor-in accordance with the defendant’s contract with the Brass-Company. This construction is consistent with the position, taken by the plaintiff in its letter to the defendant of August-19, 1918, endeavoring to reach a final settlement under contract G-919-501-A, in which the plaintiff stated that “ We-understand the contracts the Government originally held with the Chase Rolling Mills and the American Brass Company had been assigned to us and that we would be debited’ by these two companies for the material shipped us. We- had this matter up repeatedly but have learned only recently that these two mills had been paid direct by the Government for the material.” The Government at no time prior, to final settlement stated that its understanding of the supplemental contract was any different. The defendant simply' charged the plaintiff under contract G-919-501-A in the-final settlement thereof with the total amounts it paid to the-Chase Rolling Mills Company and the American Brass Company, as shown in Finding XIV, without stating what portion, if any, of the material supplied by these two companies,, and shipped to the defendant at plaintiff’s plant, had beem delivered to the plaintiff. This is the foundation of the-counterclaim in this suit which we held in the original opinion, and now hold, was without merit upon failure of proof by the defendant that plaintiff received the material. The-defendant’s own record and the testimony of its officers show that plaintiff did not receive the material for which the defendant by its counterclaim seeks to charge it. By Article-Ill of the supplemental contract of April 27, 1918, the-plaintiff simply assumed the defendant’s contract with the-American Brass Company and the defendant agreed that the-plaintiff should have all the benefits thereunder. The defendant prevented the plaintiff from receiving any of the-benefits of the Brass Company’s contract, 511-A. It, therefore, failed in the performance of its obligations to the plaintiff under the supplemental contract and can not hold the-plaintiff for that which it did not receive. In giving a¡. proper construction to a contract the court is required to ex *238 amine the entire contract to consider the relation of the parts and the circumstances under which it was signed. “ The same principles of right and justice which prevail between individuals should control in the construction and carrying out of contracts between the Government and individuals.” United States v. Stage Co., 199 U. S. 414. “A Govermnent contract should be interpreted as are contracts between individuals, with a view to ascertaining the intention of the parties and to give it effect accordingly, if that can be done consistently with the terms of the instrument.” Hollerbach v. United States, 233 U. S. 165. Upon the facts in this record, we doubt whether the plaintiff was liable for the full '$452,542.95 demanded of it in the defendant’s letter of August 26, 1918, and which it paid; also, whether it was liable for the amount of $21,189.53 deducted from the final voucher as shown in letter of September 4, 1918, set forth in Finding XIV, totaling $473,132.48. But these matters are not now in issue.
As stated in the final paragraph of the court’s opinion of October 20, 1930, the question of the quantity, value, and disposition of the forgings or the probable freight charges for transportation to and from the fabricating factories, the allowance made or not made to the fabricating manufacturers, or the question of the fuses used in testing operations, are all subordinate to the counterclaim in the main; namely, whether the plaintiff was liable in all events for any amount, or amounts, paid by the United States to the Chase Bolling Mills or the American Brass Company for raw material which it has not been shown the plaintiff ever received or used.
The motion for a new trial now under consideration asks that Finding IV be amended to make the supplemental agreement based upon amendment No. 1 of February 19, 1918, a part of the findings of fact. To this extent the motion is allowed, and Finding IV published October 20, 1930, is amended by adding at the end thereof the following: “ A •copy of said supplemental agreement based upon the said amendment No. 1 of February 19, 1918, is attached to defendant’s counterclaim as Exhibit 1, and is by reference .made a part hereof.”
*239 For the reasons hereinbefore stated, the second motion for a new trial is otherwise denied.
Whaley, Judge; Williams, Judge; GeeeN, Judge; and Booth, Chief Justice, concur.