**AMP INCORPORATED**

v.

**The UNITED STATES.**

No. 29–65.

United States Court of Claims.

Jan. 19, 1968.

William J. Keating, Harrisburg, Pa., attorney of record, for plaintiff.

Howard B. Rockman, Silver Spring, Md., with whom was Asst. Atty. Gen. Edwin L. Weisl, Jr., for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

OPINION

DURFEE, Judge:

This is a patent suit arising under the provisions of 28 U.S.C. § 1498 for the alleged unauthorized use by the United States of a "Sleeve Compressing Tool" (wire-splicing device), as set forth in claims 4, 5, 7 and 10 of the U. S. Patent No. 2,612,932 (hereafter referred to as the "Vinson Patent" or "patent in suit"). The United States pleaded in its answer an affirmative defense based on an implied license arising by operation of law by virtue of a prior agreement between the parties.

The sole issue[1] before the court is whether there is an implied license under the patent in suit. We decide that there was such an implied license under the circumstances of this case.

On May 27, 1950 plaintiff, AMP, Inc. (successor-in-interest to Aircraft-Marine Products, Inc.) and defendant entered into a research and development contract No. DA–36–039–sc–168, under which plaintiff was to develop and supply to the Army a crimping tool for splicing electrical wires.

Pursuant to the requirements of the contract, plaintiff developed and furnished to the Army Signal Corps a total of 60 experimental models of the wire-splicing tool. The crimping device furnished to the Army was invented and developed by G. H. Byrem, an employee of plaintiff. A patent application for this tool was filed August 25, 1952.[2]

On June 5, 1953, the last shipment of items called for under the contract was sent by plaintiff to the Signal Corps and the acceptance of these items shortly thereafter constituted the completion of the contract.

The contract to develop and supply these wire-splicing tools also contained various clauses pertaining to patent rights, which in relevant part, provide as follows:

ARTICLE 38 PATENT RIGHTS

(a) As used in this clause, the following terms shall have the meanings set forth below:

(i) The term "Subject Invention" means any invention, improvement or discovery (whether or not patentable) conceived or first actually reduced to practice either (A) in the performance of the experimental, developmental or research work called for under this contract, or (B) in the performance of any experimental, developmental or research work relating to the subject matter of this contract which was done upon the understanding that a contract would be awarded.

\* \* \* \* \* \*

(b) The Contractor agrees to and does hereby grant to the Government an irrevocable, nonexclusive, nontransferable and royalty-free license to practice, and cause to be practiced for the Government throughout the world, each Subject Invention in the manufacture, use, and disposition according to law, of any article or material, and in the use of any method; \* \* \*. Nothing contained in this paragraph shall be deemed to grant any license under any invention other than a Subject Invention.

\* \* \*

\* \* \* \* \* \*

---

1. All facts relating to the license issue are stipulated by the parties. The parties have agreed to defer trial on the issues of patent validity, infringement, and amount of reasonable and entire compensation until resolution of this case. Since we decide the license issue in favor of defendant, it will not be necessary to litigate the other issues.

2. The patent application issued as United States Letter Patent No. 2,722,146 (hereafter referred to as "Byrem Patent") on November 1, 1955.

(i) In addition to the rights granted to the Government in the foregoing paragraphs of this clause, the Contractor hereby grants to the Government, under any patents now or hereafter issued with respect to which the Contractor now has, or prior to completion or final settlement of the contract may acquire, the right to grant licenses without becoming liable to pay compensation to others because of such grant, the right to reproduce or to have reproduced articles or materials substantially the same as those delivered to the Government hereunder * * *.

In accordance with the provisions of Article 38(b) of the contract, the Government was given a royalty-free license to practice and have practiced the invention which is the subject matter of the Byrem Patent. Relying on this license, the Government subsequently issued Invitations for Bid calling for production of the wire-splicing tool developed by plaintiff. Bids were received in response to these IFBs, and contracts were awarded by the Government. As a result thereof, approximately 26,000 wire-splicing tools, identical in structure to the disclosure of the Byrem Patent, were supplied to the Government from sources other than plaintiff.

Approximately at the same time the contract between plaintiff and defendant was completed, plaintiff discovered that a patent (Vinson Patent), which was filed in 1946 and issued in 1952, dominated its own Byrem Patent; that is to say, the wire-splicing device produced according to the disclosure of the Byrem Patent infringed the prior Vinson Patent. After some negotiations with the patentee, plaintiff acquired[3] the Vinson Patent on November 4, 1963, i. e., subsequent to the completion of the contract with defendant.

It is alleged by plaintiff that the purchase of tools by the Government, although such purchases were in accordance with the licensing provisions of the parties' agreement, infringes plaintiff's after-acquired Vinson Patent. The Government admits there would be infringement here if the Vinson Patent were in the hands of any third party, but contends that since the patent is in the hands of plaintiff, an implied license arises because of the original licensing agreement.

It is clear from this background that the issue is simply whether defendant is licensed by implication under the dominant Vinson Patent in view of the express license granted under the dominated Byrem Patent. Resolution of the issue requires analysis of the case law concerning the doctrine of implied license and also the specific provisions of the parties' contract.

I

The Government admits that the express license to practice the invention (wire-splicing device) does not by itself authorize use under the dominant Vinson Patent. The Government is correct, however, in pointing out that the law will imply a license in certain situations, including the instant situation. This principle of law has been stated to be that when a person sells a patent which employs an invention which infringes a prior patent, the person selling is estopped from bringing an action against his grantee for that infringement, even though the earlier patent is acquired after the sale of the later patent. United Printing Machinery Co. v. Cross Paper Feeder Co., 220 F. 322 (D.Ct.Mass.1915); 4 Deller's Walker on Patents, § 395, p. 565 (2d ed. 1965). The same principle applies to the grant of a patent right by license as well as assignment. Steam Stonecutter Co. v. Shortsleeves, 22 Fed. Cas.No. 13,334, p. 1168 (C.C.Vt.1879).

One argument made by plaintiff should be dealt with first because it in-

---

3. It is not necessary to resolve the factual dispute as to whether the Vinson Patent was acquired in order to protect the Byrem tool or to protect another device then being developed by plaintiff, since plaintiff's motive does not have any probative weight as to the legal issue of implied license.

troduces a distortion into the theory of implied license, and adds an unnecessary complexity to the case at bar. Plaintiff has argued that all the cases cited by defendant are distinguishable from the instant case because they rest on a finding of estoppel. Plaintiff is quite correct in this assertion that the courts generally have first looked for facts which give rise to an estoppel in the process of concluding that there is an implied license. However, plaintiff erroneously assumes that the cases and text-writers were uniformly describing the doctrine of estoppel in pais (estoppel by misrepresentation), and concludes that there can be no such estoppel here because plaintiff did not make any false representation, which is an essential element of that form of estoppel.

An analysis of the cases, however, demonstrates that the form of estoppel used in these cases to support an implied license has not been estoppel in pais. The cases do not require a showing of false representation.[4]

 This estoppel is actually in the nature of a legal estoppel.[5] The essence of legal estoppel that can be found in the estoppel of the implied license doctrine involves the fact that the licensor (or assignor) has licensed (or assigned) a definable property right for valuable consideration, and then has attempted to derogate or detract from that right. The grantor is estopped from taking back in any extent that for which he has already received consideration.

In the case of *United Printing Machinery Co.*, supra, plaintiff bought, from a stranger to the earlier assignment, a second patent and sued defendant, alleging that the machines he was using pursuant to the earlier assignment infringed the after-acquired patent. Since there was no showing whatsoever that plaintiff knew of the prior patent at the time of the assignment, there could not have been any misrepresentation by plaintiff, and as a consequence, no justification for a finding of estoppel in pais. Yet the court held that the facts did give rise to an "estoppel." By way of defining this estoppel they said in part [Id., 220 F. at 324]:

> This equitable principle seems to be also sustained by authority. A patentee cannot sell his rights to another, and buy or obtain control of an older patent, and, through such older patent, dispossess his assignee of the full benefit of what he purchased. Faulks v. Kamp (C.C.) 3 F. 898; Curran v. Burdsall (D.C.) 20 F. 835.

The estoppel applied by the court in this case was not estopped in pais but rather in the nature of a legal estoppel. The court intended to prevent plaintiff from derogating from his own grant by his subsequent acts. Thus, this case is not distinguishable since neither it nor the instant case contain any misrepre-

4. This does not mean that other forms of estoppel can ever be applied under the implied license doctrine. For example in Preformed Line Products Co. v. Fanner Mfg. Co., 225 F.Supp. 762 (N.D. Ohio E.D.1960), aff'd, 328 F.2d 265 (6th Cir. 1964), cert. denied 379 U.S. 846, 85 S.Ct. 56, 13 L.Ed.2d 51 (1964) the court held the defendant was entitled to an implied license on alternative grounds: (1) Because plaintiff was bound to know that the royalties it received were for devices corresponding to the patent in suit, defendant was justified in concluding that plaintiff consented to the manufacture of the accused devices within the scope of the asserted patent. [estoppel by acquiescence]; (2) Even if defendant was mistaken in its belief, then defendant was misled to its prejudice by plaintiff's conduct. [estoppel by misrepresentation.]

5. See generally, 31 C.J.S. Estoppel §§ 10, 21–35, 59–64; compare, "Estoppel by deed [legal estoppel] is distinguished from estoppel in pais in that it appears from the face of the deed, and it does not require all of the elements of an estoppel in pais. [Id. at 297.]
 " 'Estoppel by warranty' is a species of estoppel by deed. It is an estoppel based on the principle of giving effect to the manifest intention of the grantor appearing on the deed, as to the lands or estate to be conveyed, and of preventing the grantor from derogating from or destroying his own grant by any subsequent act." [Id. at 297.]

sentation. Both cases turn on the manifest intention of the parties' agreement.

In Curran v. Burdsall (D.C.) 20 F. 835 (1883) basically the same facts were present. Plaintiff assigned all "right, title and interest in and to said patents" to defendant, and then sought to restrain defendant from using the subject of those patents (lumber driers) as an infringement of prior patents which plaintiff obtained subsequent to the assignment. The court dismissed plaintiff's bill, saying [Id. at 837]:

> Complainant Curran, having set forth in his patent No. 189,432 the curtain suspended from the ceiling, is now estopped from defeating the right of defendant to construct lumber-driers in accordance with the terms of the patent by the purchase of the older patent of Johnson and Sumner. Curran has held himself out to the world as the inventor of this peculiar curtain device, and it would be grossly unjust and inequitable to allow him to defeat his assignee's rights to the full enjoyment of this patent by acquiring the ownership of this older patent, even if the older patent clearly anticipated the Curran device.

The implied license doctrine has also been applied in fact situations analogous to the after-acquired patent situation.

In Scovill Mfg. Co. v. Radio Corp. of America, 9 F.Supp. 239 (S.D.N.Y.1935) the owner of a combination patent was sued for infringement by the owner of a patent covering a subcombination used in the construction of defendant's combination. The patents covering the combination and the subcombination were originally issued to the same individual who subsequently assigned the former to one party (predecessor of defendant) and the latter to a different party (predecessor of plaintiff). In deciding that the owner of the combination patent had an implied license to use the patented subcombination part as an element in construction of the combination, the District Court found an implied license, and pointed out that otherwise the definable property right which had been granted

"would be useless to the grantee." [9 F.Supp. at 241].

In Frederick B. Stevens, Inc. v. Steel & Tubes, Inc., 114 F.2d 815 (6th Cir. 1940) the court applied the implied license doctrine to the situation where the licensor-plaintiff filed for and received a second patent which described a part of a paint-spraying machine previously patented to plaintiff, and expressly licensed to defendant. Plaintiff brought suit for infringement of the second patent under which defendant was not licensed. The court held that defendant had an implied license under the second patent and plaintiff "could not impose an obstacle to the use of a machine which had been bought and paid for." [114 F. 2d at 818]. Although the court did not use the language of estoppel but only that of implied license, it is obvious that it was utilizing basically the same rationale we have discussed above. The court concluded by saying [Id. at 819–820]:

> There is ample authority for the rule that where the owner of a patent grants to a licensee the right to use a patented machine, the grant carries with it, by necessary implication, a license under any other patent of the licensor which would be infringed by operation under the grant.

These cases demonstrate that the doctrine of implied license does not rest on a theory of estoppel in pais, but rather on a rationale of legal estoppel. This latter term is merely shorthand for saying that a grantor of a property right or interest cannot derogate from the right granted by his own subsequent acts. Thus, plaintiff is wrong in asserting that these cases are distinguishable. The doctrine established in these cases applies squarely to the problem here.

It is not enough, however, to demonstrate that estoppel in pais is not a prerequisite for implying a license by law. It is also necessary to define the property right granted to defendant by plaintiff, and also to show how plaintiff is attempting to derogate or detract from that right.

In the case before us, plaintiff granted to the Government "an irrevocable, non-exclusive, nontransferable and royalty-free license to practice, and cause to be practiced for the Government throughout the world each Subject Invention in the manufacture, use, and disposition according to law, of any article or material, and in the use of any method; * * *" (Art. 38(b) of contract). Article 38(a) (i) of the contract defines specifically the nature of a Subject Invention: "The term 'Subject Invention' means any invention, improvement or discovery (whether or not patentable) * * *."

■ The facet of this licensing agreement which is of crucial importance and which plaintiff ignores is that it licenses the Government to use an *idea* and not just the Byrem Patent itself. The Subject Invention may be practiced by or for the Government throughout the world "whether or not patentable." Art. 38(a) (i). Thus the license was to practice or cause to be practiced an idea regardless of its patentability. It is the idea embodied by the Byrem tool, which also happens to be patented, that was licensed to the Government. Relying on this license, the Government caused to be practiced this invention conceived of by plaintiff's employee, G. H. Byrem. The tools which allegedly infringe the patent in suit were *identical in structure to the Byrem tool*.[6] The Government only did what it was licensed to do, no more and no less. Consequently, plaintiff is estopped from denying the Government the use of this tool. Plaintiff cannot negate the license it granted, and for which it received valuable consideration. Whatever rights third parties may have had against the Government are irrelevant to plaintiff's case since plaintiff licensed its rights to defendant, whereas other parties did not.

■ Plaintiff is also wrong in stating that the consideration paid is only for the research and development of the Byrem tool. This argument, in effect, asks us to overlook one part of the contract. It is elementary that money paid by one party pursuant to a contract is consideration for performance of *all* the terms of the contract, and not just some of the terms. Since the Government paid valuable consideration for all the rights and privileges contained in the contract, plaintiff, as party to that contract, cannot derogate from those rights, which is in effect, what it is trying to do. Based on the authority cited above, we hold that an implied license under the Vinson Patent arises by operation of law running in favor of the Government in order to protect the specific rights granted to the Government by contract.

## II

We must next consider the argument so strenuously urged by plaintiff, viz., that the contract precludes an implied license by its very terms. Plaintiff specifically points to the language of Article 38(b) which states:

> * * * Nothing contained in this paragraph shall be deemed to grant any license under any invention other than a Subject Invention. * * *

Plaintiff argues that after-acquired patents (i. e., patents acquired after termination of the contract) are the only patents which fall into this clause. Unless the clause is so construed, it has no meaning whatsoever.

■ We agree with plaintiff that it is a cardinal principle of construction of contracts that all parts of the writing, and every word in it, will, if possible, be given effect. Henry J. Kaiser Co. et al. v. McLouth Steel Corp., 175 F.Supp. 743 (E.D.Mich.S.D.1959), aff'd, 277 F.2d 458 (6th Cir. 1960). But it is also a cardinal rule that the parties' intent must be gathered from the instrument as a whole. International Arms & Fuze Co. v. United States, 73 Ct.Cl. 231 (1931). Thus, in order to understand the above cited language, we must look to the whole thrust and purpose of Article 38. The primary

---

6. Commissioner Davis' finding of fact No. 7 states that "defendant acquired from sources other than the plaintiff 26,000 wire-splicing tools made as shown and described in Byrem Patent 2,722,146."

expressed purpose of this Article is found in the first part of paragraph (b) of the Article which states: "The Contractor agrees to and does hereby grant to the Government an irrevocable, nonexclusive, nontransferable and royalty-free license to practice, and cause to be practiced for the Government throughout the world, each Subject Invention in the manufacture, use and disposition according to law, of any article or material, and in the use of any method; * * *." As we pointed out earlier, the royalty-free license is not to practice a specific patent, but to practice an idea. The latter part of paragraph (b) of Article 38 is actually in harmony with this intention of the parties in that it states that nothing shall be deemed to grant any license under any invention "other than a Subject Invention." The wire-splicing tool which the Government had caused to be practiced was the identical tool licensed under the contract; in other words, it embodied the Subject Invention. In order to protect the Government's right to practice the Subject Invention, the law implies a license under the Vinson Patent to go along with the express license under the Byrem Patent. But both licenses cover the same tool. The language of Article 38(b) relied on by plaintiff does not preclude such a result since it refers only to inventions *other* than the Subject Invention. It is only intended to exclude subject matter of substantially different nature. Cf., Green et al. v. Aerosol Research Co., 374 F.2d 791 (7th Cir. 1967). Thus, the language does have meaning, and it does harmonize with the whole of Article 38.

■ Plaintiff also relies on the language of Article 38(i) to lend credence to its interpretation:

* * * the Contractor hereby grants to the Government, under any patents now or hereafter issued with respect to which the Contractor now has, or prior to completion or final settlement of the contract may acquire * * *.

Plaintiff contends that this clause limits defendant's rights in patents to those acquired during the contract period, and

since the Vinson Patent was acquired after the completion of the contract, no license under the Vinson Patent was intended to be granted. There are two reasons why this contention cannot be accepted. First, the clause does not actually prohibit a license under an after-acquired patent. On this issue the clause is silent. Second, the clause is specifically dealing with rights granted to defendant "in addition to the rights granted to the Government in the foregoing paragraphs of this clause [Art. 38(b)] * * *." By its very terms, then, this paragraph does not derogate from the right to practice the Subject Invention granted by Article 38(b) of the contract.

■ Thus the two paragraphs of Article 38 relied on by plaintiff do not demonstrate any intent to preclude an implied license arising by operation of law to protect the Subject Invention. The case of Eastern Rotorcraft Corp. v. United States, Ct.Cl., 384 F.2d 429, decided October 13, 1967, does not add any support to plaintiff's position because in that case the contract expressly stated that the Government does not obtain a license either "directly or by implication" to inventions made outside the contract. In addition, the Government there was actually aware of the dominating patent at the time it entered into the contract. In the instant case, implied licenses were not expressly precluded nor was the dominating patent known to either of the contracting parties. So although it is true that the granting of licenses is generally a matter of negotiation, *Eastern Rotorcraft Corp.*, supra, there are a few instances when the law will do what negotiation did not explicitly do, but must have intended to do. This must be so for the reason succinctly stated in the *United Printing Machinery Co.* case, supra, 220 F. at 324:

I find no equity in a bill in which the complainant seeks substantially to keep what it has sold, and to prevent the defendant from having what it has bought.

We therefore find that plaintiff granted to the Government under Article 38

of the contract the right to practice and have practiced the idea embodied by the wire-splicing device in question. For this reason, and on the basis of the authority cited, we hold that defendant is licensed by implication under the dominant Vinson Patent. Consequently, plaintiff's petition is dismissed.

DAVIS, Judge (concurring):

I place my vote for the defendant on the express license granted it by this contract to practice the invention, and would defer handling the porcupine problem of an implied license. The agreement expressly authorizes the Government "to practice, and cause to be practiced for the Government throughout the world, each Subject Invention," and then goes on to define "Subject Invention," as "any invention, improvement or discovery (whether or not patentable) conceived or first actually reduced to practice * * in the performance of the experimental, developmental or research work called for under this contract * * *." As the court points out, this definition is not linked to a particular patent or patents but, rather, refers to "any invention, improvement or discovery (whether or not patentable)"—to ideas or conceptions, not to patents. The agreement is thus broader than licenses which are explicitly tied to specified patents (as distinguished from discoveries or inventions) and should therefore not be read as if "Subject Invention" meant only the Byrem patent or some other patent resulting from the contract work. For the reasons given by Judge Durfee, the articles bought by the defendant clearly embodied a "Subject Invention" under this contract—if that term is understood as relating to ideas, conceptions, or inventions, and not to the Byrem or any other patent—and in my view were expressly licensed for use by or for the United States as against any patent held by this plaintiff, no matter when or how acquired. I believe too, substantially for the reasons stated in Part II of Judge Durfee's opinion, that the license provisions of the contract as a whole support, and do not negate, this interpretation of "Subject Invention" and of the express license granted the Government. Even if Mr. Byrem's discovery could not validly be patented because anticipated by the Vinson patent, the company agreed that, so far as it was concerned, the United States could utilize that idea, wholly free of liability, because it was conceived and reduced to practice in the performance of the contract. The Byrem idea did not change its character or birthright or become different when the plaintiff acquired the Vinson patent which happened to embody the same conception; the idea, as such, remained free to the Government, as against plaintiff, whether it was incorporated in one patent (Byrem) or two patents (Byrem and Vinson) or ten patents.[1]

1. I would invoke the theory of the implied license cases, such as United Printing Machinery Co. v. Cross Paper Feeder Co., 220 F. 322 (D.Mass.1915), only as one basis for reading "Subject Invention" in this contract to cover the idea, conception or invention incorporated into the Byrem patent, not the Byrem patent itself or alone. See, also, Mine Safety Appliances Co. v. United States, 364 F.2d 385, 392, 176 Ct.Cl. 777, 789–790 (1966).