MAYER, Circuit Judge,
dissenting-in-part.
In my view the trial court correctly decided that claim 2 of U.S. Patent No. 6,467,914 (“the '914 patent”) is invalid as obvious, that U.S. Patent Application No. 06/786,269 (“the '269 application”), which eventually issued as the '914 patent, did not fully disclose the invention of claim 2 of the '914 patent, and that Honeywell International Inc. and Honeywell Intellectual Properties Inc. (collectively “Honeywell”) are precluded from recovering damages for infringement by products that a predecessor company, Honeywell Inc., sold to the government. I therefore respectfully dissent from Parts LA, I.B, and III of the court’s opinion.
I. Obviousness
The '914 patent claims a color display system, such as that used in aircraft cockpits, that is compatible with the use of night vision goggles (“NVGs”). Compatibility between a color display and NVGs is a concern because the presence of too much light inside the cockpit, particularly light with wavelengths in the red and infrared regions of the spectrum, can overwhelm NVGs and interfere with their use. There is no dispute that elements (a)(1) and (a)(2) of claim 2 of the '914 patent, which discuss filtering of the blue and green bands of the color display, were well known in the art in 1985, the year the '269 application was filed. Honeywell argues that what would not have been obvious in 1985 is the idea of “splitting” the red color band, using filters to allow a narrow-band of red to be displayed while blocking this same narrowband at the NVGs, as is taught by claim 2 elements (a)(3) and (b). As the trial court correctly found, however, the prior art does disclose this concept. One of ordinary skill in the art in 1985 would have known how to apply this prior art to a color display in a cockpit and make adjustments to the filters and light source to achieve the display system taught in claim 2 of the '914 patent. KSR Int’l Co. v. Teleflex Inc., 550 U.S. 398, 421, 127 *1305 S.Ct. 1727, 167 L.Ed.2d 705 (2007) (“A person of ordinary skill is ... a person of ordinary creativity, not an automaton.”). I would therefore affirm the trial court’s determination that the claim is invalid as obvious.
Element (a)(3) of claim 2 of the '914 patent teaches a filter “for filtering the red color band ... and passing a narrowband of the red color band.” According to the trial court’s construction, the red color band represents light with a wavelength between 620nm and 780nm. Honeywell Int’l, Inc. v. United States, 66 Fed.Cl. 400, 470-71 (2005) (Claim Construction Order). One of the prior art references employs a filter that passes red light from 620nm to 710nm, thereby teaching the limitation of element (a)(3) of claim 2. See H.D.V. Boehm, The Night Vision Goggle Compatible Helicopter Cockpit, Tenth European Rotorcraft Forum, August 28-31, 1984 (“Boehm”). A second prior art reference also discloses the limitation of element (a)(3), as it describes filtering that allows for “excellent transmission throughout the visible region and then cuts out the near infrared.” See Jay F. Verney, Aircraft Lighting Systems, American Helicopter Society, 41st Annual Forum Proceedings, May 15-17, 1985 (“Verney”). According to the government’s expert, Verney “shows excellent transmission out to about 640 nm and measurable transmission out to about 700 nm.”
The majority agrees with Honeywell’s argument that the limitation of element (a)(3) of claim 2 is not met because the filters employed in Boehm and Verney would not pass perceptible red light. This argument confuses the trial court’s holding that claim 2 requires perceptible light to be emitted within the wavelengths defined as the red color band with a holding that claim 2 requires light to be emitted which is perceived as red. The trial court consistently held the former — in its orders on claim construction, infringement, and validity — and never held the latter. See e.g. Honeywell Int’l, Inc. v. United States, 70 Fed.Cl. 424, 464 (2006) (Infringement Order) (noting that the light emitted need not be perceived as red to infringe the red color band element of claim 1); id. at 467 (“Claim 2(a)(3) of the '914 patent requires only that the third filter pass a ‘narrow band at the red color band,’ i.e., a narrow range of wavelengths within 620 nm to 660 nm.”) (emphasis added); Honeywell Int’l Inc., 81 Fed.Cl. 514, 545 (2008) CInvalidity/Defenses Order) (“The court’s claim construction ... did not require the perception of the red primary of a full color display.”).* In fact, the trial court specifically found that the accused systems infringe claim 2 despite the fact that they do not emit perceptible red light; there is no indication that the accused systems would have been found to infringe had the trial court applied the majority’s new construction. Infringement Order, 70 Fed.Cl. at 467; see also id. at 464 (rejecting the argument that an accused system did not infringe claim 1 because there was no evidence that it “produces red energy that can be detected by the human eye”). In any case, testimony by experts for both Honeywell and the government indicates that one of skill in the art at the time would have known how to adjust the light source to increase the perceptibility of the light in the red color band while employing *1306 the filters of Boehm or Verney. In determining whether a patented invention is invalid for obviousness, “we do not ignore the modifications that one skilled in the art would make to a device borrowed from the prior art.” In re Icon Health & Fitness, Inc., 496 F.3d 1374, 1382 (Fed.Cir.2007).
Element (b) of claim 2 of the '914 patent employs a complementary filter at the NVGs, which blocks the same narrowband of red light that is passed by the filter of element (a)(3). The use of such a complementary filter at the NVGs is described in Boehm and a third prior art reference, German Patent Application, DE 33 13 899, Oct. 18, 1984 (“the German patent”). While neither reference teaches a cutoff point (below which light will be blocked from entering the NVGs) in the red color band, as is taught by the '914 patent, one skilled in the art at the time the patent application was filed would have understood that this cutoff point could be shifted along the wavelength spectrum. In fact, the German patent clearly teaches that the cutoff point can be set at any wavelength, explaining that the display filter must simply block light above some threshold wavelength and the NVG filter must block light below that threshold wavelength.
The prior art therefore discloses all the elements of claim 2 of the '914 patent. While none of the references perform the filtering exactly as taught by the claim, that does not preclude a finding of obviousness. KSR Int'l 550 U.S. at 418, 127 S.Ct. 1727 (“[T]he analysis need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ.”). Once the military made the decision to allow more red light in the cockpit, at the expense of NVG performance, it would have been obvious to those skilled in the art to combine these references to allow the display of a limited amount of red light in such a way as not to interfere with the NVGs, which is taught by claim 2.
Honeywell’s argument against obviousness relies heavily on secondary considerations. It places great weight on the fact that, prior to the filing of the '269 application, the military solved the NVG compatibility problem by limiting the amount of red light in cockpits. The military later provided a second option to pilots that allowed a small amount of red light to be displayed with a corresponding degradation in NVG functionality. According to Honeywell, this change reflects the military’s review of the '269 application, pursuant to the Invention Secrecy Act, between the issuance of the two specifications governing NVG use in cockpits. Several military witnesses testified, however, that the two events are unrelated. Invalidity/Defenses Order, 81 Fed.Cl. at 564-65. The change in the military specification reflected a desire on the part of some military pilots, particularly those of fixed-wing aircraft, to sacrifice some amount of NVG sensitivity in exchange for allowing more red light to be displayed in the cockpit. This was a simple shift, changing the cutoff point for the red light that could be displayed (and was therefore blocked by the NVGs) from 625nm to 665nm, a shift that was well within the technical ability of those of ordinary skill in the art at the time.
An additional influence on the military specification was the advancements made to the color displays themselves, which were in their infancy at the time the original NVG specification was drafted. Problems with the use of color displays that were independent of NVG compatibility— in particular their limited daylight readability — initially prevented the military from attempting to accommodate their use in cockpits. Once these problems were *1307 resolved and color displays could otherwise be implemented, their compatibility with NVGs became more important. These factors, not the review of the '269 application, caused the military to adjust the specification governing red light in cockpits. See KSR Int'l, 550 U.S. at 419, 127 S.Ct. 1727 (“[lit often may be the case that market demand, rather than scientific literature, will drive design trends.”). The secondary considerations advanced by Honeywell are therefore insufficient to overcome the strong showing of obviousness.
II. Written Description
The three claims that issued in the '914 patent were not filed with the original '269 application. Instead, they were first filed in a continuation of the related '268 application, years after the '269 application was filed. Honeywell later abandoned the continuation and transferred its allowed claims to the '269 application, making conforming amendments to the '269 specification and drawings.
The trial court held that the '269 application did not fully disclose the invention of claim 2 of the '914 patent. The '914 patent claims “a local source of light having blue, red, and green color bands.” To this single, multiband source of light the '914 patent applies “a plurality of filters,” including one that filters only the red color band and passes a narrowband of red. In contrast, the '269 application claimed a local source of light that “includes a plurality of distinct monochromatic color generators.” In other words, each color generator would emit a single color: red, green, or blue. The application further claimed a bandpass filter “arranged to block light from one of said color generators except at preferred range of frequencies.” In this manner the '269 application sought to limit the red light emitted by the display; a bandpass filter over the red color generator would allow only a portion of the red color band to pass.
In order to meet the written description requirement of 35 U.S.C. § 112, the specification “must describe the invention sufficiently to convey to a person of skill in the art that the patentee had possession of the claimed invention at the time of the application, i.e., that the patentee invented what is claimed.” LizardTech, Inc. v. Earth Res. Mapping, Inc., 424 F.3d 1336, 1345 (Fed.Cir.2005). There is no indication in the '269 application that the inventor conceived, at that time, the invention in claim 2 of the '914 patent, which filters a single source of light carrying multiple color bands. As noted by the trial court, the use of the bandpass filter described in the '269 application over the multiband light source claimed in the '914 patent would render the full color display inoperative. Invalidity/Defenses Order-, 81 Fed.Cl. at 569-70. This is because the bandpass filter of the '269 application would block everything except the narrow red band, including the blue and green light, resulting in the display of only red light. The trial court therefore did not commit clear error in finding that the original disclosure of three separate, monochromatic light generators would not demonstrate to one skilled in the art that the inventor possessed the subject matter of claim 2 at the time the application was filed.
III. First Sale Doctrine
One of the accused infringing devices, the Color Multifunction Display (“CMFD”) installed in F-16 aircraft, was manufactured and sold to the government by Honeywell Inc. prior to its 1999 merger with AlliedSignal Inc., the company that held the rights to the '269 application. Honeywell resulted from the merger of the two companies. The trial court held that Honeywell is barred by the first sale doctrine from recovering damages for infringement because “[t]he patentee and the seller of the patented product ... are *1308 now the same corporate entity.” Invalidity/Defenses Order, 81 Fed.Cl. at 576-77. Once again, I would affirm.
The sale by a patentee of a patented product extinguishes the patent rights with respect to that product. Quanta Computer, Inc. v. LG Elecs., Inc., 553 U.S. 617, 128 S.Ct. 2109, 2115, 170 L.Ed.2d 996 (2008). While the seller of the CMFDs did not hold the rights to the '269 application at the time they were sold, the interests of the owner of the application later merged with those of the company that sold the infringing devices. Because Honeywell received compensation for the sales, through Honeywell Inc., its patent rights in those products are extinguished. The majority’s contrary finding allows Honeywell to recover for infringement when Honeywell itself is the ultimate recipient of the profits from the sale of the infringing products.
This situation parallels that presented in AMP Inc. v. United States, 182 Ct.Cl. 86, 389 F.2d 448 (1968). There the court held that a patentee was barred from using a preexisting, but later acquired, patent to derogate from a license negotiated under a different patent, noting “[t]he grantor is estopped from taking back in any extent that for which he has already received consideration.” Id. at 452; see also Hewlett-Packard Co. v. Repeat-O-Type Stencil Mfg. Corp., 123 F.3d 1445, 1451 (Fed.Cir.1997) (“Generally, when a seller sells a product without restriction, it in effect promises the purchaser that in exchange for the price paid, it will not interfere with the purchaser’s full enjoyment of the product purchased.”). Similarly, Honeywell should not be permitted to interfere with the government’s enjoyment of products sold to the government by its predecessor.

 While the trial court construed "color bands" "to include the range of wavelengths, within which the colors blue, red, and green are visible to the human eye,” Claim Construction Order, 66 Fed.Cl. at 466, this construction does not mean that each color band is only present when a human can perceive the relevant color. Instead, the construction reflects the fact that the range of wavelengths associated with each band can only be defined in terms of colors perceived by humans.